IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, RECEIVER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-0775-N |
| | § | |
| REBECCA HAMRIC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

# **ORDER**

This Order addresses Plaintiff Ralph S. Janvey's (the "Receiver") motion for summary judgment, conditional motion to sever, and motion for turnover order [217] against Defendant Paul Winter, in his capacity as Dependent Executor of the Estate of Robert Winter (the "Winter Estate"), and the Winter Estate's motion to dismiss [96]. The Court grants the Receiver's motion in part and denies the Winter Estate's motion to dismiss. Specifically, the Court grants the Receiver's motion for summary judgment, denies the Receiver's motion to sever, and denies the Receiver's motion for turnover order.

## I. ORIGINS OF THE MOTIONS

This action arises out of the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). The facts associated with Stanford's scheme are well established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and will not be recounted in great depth here. Essentially, Stanford's scheme entailed the sale of fraudulent

certificates of deposit ("CDs") through an offshore bank located in Antigua, known as Stanford International Bank Limited ("SIBL"). Although Stanford represented to investors that the CD proceeds were invested only in low-risk, high-return funds, in reality the proceeds were funneled into speculative real estate investments and used to fund Allen Stanford's extravagant lifestyle. After Stanford's scheme was exposed, this Court appointed the Receiver[1] to oversee the Stanford entities and subsequently appointed the Official Stanford Investors Committee ("OSIC")[2] to supplement the Receiver's asset recovery efforts.

The Receiver brings this action on behalf of the Stanford entities against various former Stanford directors, officers, and employees. The Receiver alleges that Winter – as a SIBL director – knew or should have known that Stanford was a Ponzi scheme, yet he continued to serve as a director – silently – while Stanford evaded regulatory detection and continued his scheme. Based on these allegations, the Receiver asserts a claim for breach of fiduciary duty against Winter. Winter died in September of 2014, and his estate was substituted as a party in this lawsuit. Paul Winter, serving as dependent executor of the

---

[1]The Court appointed the Receiver to represent the now defunct Stanford entities in the ongoing federal equity receivership. His rights and obligations are laid out in detail in this Court's Second Amended Order Appointing Receiver [1130], *in SEC v. Stanford Int'l Bank Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009) (the "Receivership Order").

[2]The Official Stanford Investors Committee is a body tasked with representing Stanford investors and has similar rights and responsibilities as a bankruptcy creditors' committee appointed under Title 11 of the United States Code. *See generally* Order, Aug. 10, 2010 [1149], *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009) (the "Committee Order").

Winter Estate, submitted claims against the insurance policies[3] that covered Robert Winter as part of the estate administration process. Whether the Winter Estate is entitled to coverage under those policies is the subject of a separate action. *See Certain Underwriters at Lloyds of London v. Winter*, Civil Case No. 3:15-CV-01997-N (N.D. Tex. filed June 11, 2015).

## II. THE COURT DENIES THE WINTER ESTATE'S MOTION TO DISMISS

The Winter Estate, as Winter's successor in this litigation, seeks to dismiss the Receiver's complaint. The Winter Estate argues that the Receiver lacks standing to assert this breach of fiduciary duty claim. The Winter Estate also challenges the sufficiency of the Receiver's complaint, alleging that the complaint fails to meet the Federal Rule of Civil Procedure 8(a) pleading standard and thus fails to state a claim under Rule 12(b)(6). Finally, the Winter Estate argues that the Receiver's complaint fails to satisfy Rule 9(b). These arguments are unpersuasive. Accordingly, the Court denies the Winter Estate's motion to dismiss.

### A. THE RECEIVER HAS STANDING TO ASSERT HIS CLAIM

Nothing precludes the Receiver from bringing this claim. The Receiver has authority to bring claims on behalf of injured Stanford entities. *See* Receivership Order ¶ 5(c); Order 5–9, Sept. 11, 2013 [58], *in Janvey v. Adams & Reese, LLP*, Civil Action No. 3:12-CV-0495-N (N.D. Tex. filed Feb. 16, 2012). While the Committee Order grants OSIC the authority

---

[3] The policies are: (1) Directors and Officers' Liability and Company Indemnity Policy No. 576/MNK558900, (2) Section 3 of the Financial Institutions Crime and Professional Indemnity Policy No. 576/MNA851300, and (3) the Excess Blended Wrap Policy No. 576/MNA831400 (the "Policies).

to bring claims against third parties, Committee Order ¶ 9, OSIC's authority to do so is not in itself a limit on the Receiver's authority to bring his own claims. In fact, the Committee Order expressly contemplates cooperation between the Receiver and OSIC in determining which claims to bring and which plaintiff should assert which claims. Committee Order ¶ 8.

The Receiver adequately alleges that he did not assign this breach of fiduciary duty claim to OSIC. While the Winter Estate accurately notes that OSIC is asserting claims against the Winter Estate, those claims are (1) not for breach of fiduciary duty, (2) brought in a different case, and (3) brought solely by OSIC. *See* Pls.' First Am. Compl. [7], *in Janvey v. Willis*, Case No. 3:13-CV-03980-N (N.D. Tex. filed Oct. 1, 2013). The Receiver sufficiently alleges that he retained the breach of fiduciary claim and is asserting it on SIBL's behalf, as he is permitted to do. Resp. 3 [108].

The Receiver's retention of one claim while the Committee brings different claims in a different case does not violate the rule against claim-splitting. "Claim-splitting occurs when a single 'cause of action' is split by advancing one part in an initial suit and another part in a later suit." *Ameritox, Ltd. v. Aegis Sciences Corp.*, 2009 WL 305874, at *4 (N.D. Tex. 2009) (Fitzwater, J.) (quotation marks and citation omitted). The rule against claim-splitting prohibits a second lawsuit "if the claim involves the same parties and arises out of the same transaction or series of transactions as the first claim." *Id.* (quotation marks and citation omitted). Here, the Receiver is asserting one claim in one law suit, while OSIC – a different plaintiff – is asserting different claims in a different law suit. The rule against claim-splitting allows different parties to pursue their claims in this manner. Accordingly,

the Receiver has standing to assert the breach of fiduciary duty claim against the Winter Estate.

## B. THE RECEIVER ADEQUATELY PLED HIS CLAIM

The Receiver adequately pled his breach of fiduciary duty claim against the Winter Estate. When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted). In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them

in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

Here, the Receiver has alleged sufficient facts to state a claim for breach of fiduciary duty under Texas law. *See Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (stating that a breach of fiduciary duty claim requires proof of the following elements: "(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff . . . ."). The Receiver's complaint alleges each of the necessary elements to state a breach of fiduciary claim: (1) that Winter had a fiduciary relationship with SIBL, (2) that Winter breached his fiduciary duty to SIBL, and (3) that Winter's breach injured SIBL. The complaint alleges that Winter served as a director of SIBL, Pl.'s Compl. ¶ 118 [1], and that Winter's position with SIBL created a fiduciary relationship, *id.* ¶ 124. The complaint further alleges that Winter breached his duties by ignoring clear indications that SIBL was a key part of Stanford's Ponzi scheme. *Id.* ¶¶ 58, 118–19, 125. Finally, the complaint alleges that Winter's breach injured SIBL in that SIBL paid Winter to serve as director despite his alleged abdication and that Winter's alleged failure to recognize or report numerous red flags caused SIBL to incur greater liability. *Id.* ¶¶ 1, 125. Accordingly, the Receiver has adequately stated a breach of fiduciary duty claim against the Winter Estate.

The heightened pleading standard under Rule 9(b) does not apply to this claim because the conduct alleged to constitute the breach of fiduciary duty is nonfraudulent conduct. Rule 9(b) requires parties alleging fraud or mistake to "state with particularity the

ORDER – PAGE 6

circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, "[b]y its clear terms, Rule 9(b) applies only to averments of fraud or mistake, not to averments of negligence, breach of fiduciary duty or non-fraudulent misstatement." *Tigue Inv. Co., Ltd. v. Chase Bank of Tex., N.A.*, 2004 WL 3170789, at *2 (N.D. Tex. 2004). Because the Receiver avers breach of fiduciary duty, not fraud or mistake, and that breach is based on nonfraudulent conduct, Rule 9(b) does not apply. Accordingly, the Court denies the Winter Estate's motion to dismiss.

### III. THE COURT GRANTS THE RECEIVER'S MOTION FOR SUMMARY JUDGMENT

#### *A. The Summary Judgment Legal Standard*

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute over a material fact is genuine if, based on the evidence, a reasonable jury could return a verdict for either party. *Id.* at 252. In ruling on a motion for summary judgment, the Court must accept the nonmoving party's evidence and draw all justifiable inferences in its favor. *Id.* at 255.

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. The moving party may meet this burden by either (1) presenting evidence that affirmatively demonstrates the absence of any genuine issue of

ORDER – PAGE 7

material fact, or (2) after adequate time for discovery, demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party cannot defeat summary judgment by resting upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue of fact. *Id.* at 324.

### *B. The Receiver is Entitled to Summary Judgment*

The Receiver is entitled to summary judgment because he has established that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. The Winter Estate did not respond to the Receiver's motion and thus the Court treats the Receiver's factual assertions as undisputed. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (holding, upon nonmovant's failure to respond to a motion for summary judgment, that the district court properly "accepted as undisputed the facts so listed").

Based on the undisputed facts, the Receiver is entitled to judgment as a matter of law, having established all of the essential elements of his breach of fiduciary duty claim. Under Texas law, the essential elements of a breach of fiduciary duty claim are "(1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 581 (5th Cir. 2015) (quoting *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex.

App. – Dallas 2010, no pet.)).  The Receiver's undisputed facts establish each of these three elements.

*1. Winter Owed Fiduciary Duties to SIBL.* – Winter owed fiduciary duties to SIBL because, as a member of SIBL's Board of Directors, he stood in a fiduciary relationship with SIBL.  Corporate officers and directors owe the corporation fiduciary duties of care and loyalty.  *In re Harwood*, 637 F.3d 615, 620 (5th Cir. 2011) (citing *Pinnacle Data Servs., Inc. v. Gillen*, 104 S.W.3d 188, 198 (Tex. App. – Texarkana 2003, no pet.)).  The Receiver's undisputed evidence establishes that SIBL was incorporated as an "international business corporation" under Antiguan law[4] and that SIBL's articles of incorporation provide that the Board of Directors will exercise SIBL's corporate powers.  App. Supp. Pl.'s Mot. 1690–95 [219–36].  The Receiver further establishes that Winter joined SIBL's board on October 2, 1998 and served on the board until he resigned on February 25, 2009, after the Receiver had taken control of the Stanford empire.  *Id.* at 1754, 3244, 3265–67.  Thus, the undisputed evidence establishes that Winter was a SIBL director.  Accordingly, Winter owed SIBL fiduciary duties of care and loyalty.

*2. Winter Breached His Fiduciary Duty to SIBL.* – The Receiver's undisputed evidence establishes that Winter breached his duty of care to SIBL.  A corporate director's duty of care is broadly defined under Texas law: a director "must handle his corporate duties with such care as 'an ordinarily prudent man would use under circumstances.'"  *Gearhart*

---

[4]Texas law applies to this case because SIBL's nerve center was in Houston, Texas. *See* Order 8–9, Jan. 22, 2013 [909], *in Janvey v. Alguire*, Civil Case No. 3:09-CV-0724-N (N.D. Tex. filed Apr. 20, 2009).

ORDER – PAGE 9

*Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 720 (5th Cir. 1984) (quoting *McCollum v. Dollar*, 213 S.W. 259, 261 (Tex. Comm'n App. 1919, holding approved)). This flexible standard requires courts to consider various factors, including "the character of the corporation, the condition of its business, the usual method in which such corporations are managed, and any and all other relevant facts that tend to throw light upon the question of the proper discharge of the duty as a director." *McCollum*, 213 S.W. at 261. The Texas Supreme Court required bank directors, based on the nature of their business, to use more care than corporate directors in other businesses. *Seale v. Baker*, 7 S.W. 742, 747 (Tex. 1888). However, Courts will not intervene if the director's mistakes are merely negligent as long as they were within the exercise of the director's discretion in the development of the business. *Gearhart*, 741 F.2d at 721 (citing *Cates v. Sparkman*, 11 S.W. 846, 849 (Tex. 1889)).

Courts have subsequently interpreted a director's duty of care under Texas law such that a director's gross negligence exceeds the bounds of a permitted business judgment, thus allowing for liability. *F.D.I.C. v. Schreiner*, 892 F. Supp. 869, 884 (W.D. Tex. 1995) ("[C]laims for gross negligence are not barred by the business judgment rule in Texas.") (citing *F.D.I.C. v. Brown*, 812 F. Supp. 722, 725 (S.D. Tex. 1992)); *F.D.I.C. v. Harrington*, 844 F. Supp. 300, 305–06 (N.D. Tex. 1994) (Sanders, J.) ("[T]he Court concludes that Texas law imposes liability only for [a corporate director's] grossly negligent acts."). A corporate director can also be found liable if he "abdicate[s] his responsibility and fail[s] to exercise any judgment." *F.D.I.C. v. Brown*, 812 F. Supp. 722, 726 (S.D. Tex. 1992).

ORDER – PAGE 10

Based on the undisputed evidence before the Court, Winter breached his duty of care to SIBL by (1) abdicating his responsibility as a director to oversee SIBL and (2) ignoring warning signs regarding serious flaws in SIBL's operations – flaws that allowed Stanford to perpetuate his scheme.

The Receiver's evidence establishes that Winter abdicated his duties to oversee SIBL. A corporate director can be held liable under the abdication theory where the corporate decision "results from an obvious and prolonged failure to exercise oversight or supervision." *Roth v. Mims*, 298 B.R. 272, 283 (Bankr. N.D. Tex. 2003) (citing *Resolution Trust Corp. v. Acton*, 844 F. Supp. 307, 315 (N.D. Tex. 1994)). Here, the evidence shows that the SIBL Board or Directors, including Winter, failed to conduct the bare minimum functions that a "usual corporation" in SIBL's industry and circumstances would have undertaken, resulting in "an obvious and prolonged failure to exercise oversight or supervision" over SIBL. Specifically, the Receiver establishes that Winter and the SIBL board lacked "the basic components of a structure that allows for informed board decisions and management oversight"; lacked "an organized process for seeking and reviewing information about SIB[L]"; and "failed to supervise [SIBL's] compliance functions," including failing to create an internal audit committee. Pl.'s Br. Supp. Mot. Summ. J. 21–23 [218] (internal citations omitted). This abdication of the board's oversight responsibility goes beyond mere negligence and is not protected by the business judgment rule.

The Receiver's evidence also establishes that, even absent oversight, there were red flags regarding SIBL's operations that Winter ignored and that it was not "within the exercise

ORDER – PAGE 11

of discretion associated with developing a business" to do so. The Receiver establishes through the undisputed evidence that SIBL's external audits were inadequate, that internal audits were nonexistent, and that Winter was serving on a board that was incapable of carrying out its essential corporate governance functions. Pl.'s Br. Supp. Mot. Summ. J. 28–31 (internal citations omitted). The Receiver provides undisputed evidence that Winter took no action to investigate or remedy any of these deficiencies. Accordingly, Winter breached his fiduciary duty to SIBL.

      *3. Winter's Breach of His Fiduciary Duty Injured SIBL.* – Winter's breach of his fiduciary duty injured SIBL by causing SIBL to incur increased liabilities. The Receiver's undisputed evidence establishes that SIBL improperly transferred $2 billion of investor funds with no exchange or hope of return. Ex. A ¶ 27, App. Supp. Pl.'s Mot. 14. The Receiver further establishes that Winter's abdication of his board responsibilities proximately caused these improper transfers. "Proximate cause consists of two elements, foreseeability and cause in fact." *Navigant*, 508 F.3d at 289 (internal citations omitted). The factfinder "may infer proximate cause from the circumstances surrounding the event" without "direct and positive proof," but the evidence must establish proximate cause beyond mere conjecture. *Id.* (internal quotation marks and citations omitted). The Receiver provides evidence that SIBL's improper transfers were a foreseeable consequence of the lack of oversight and control by SIBL's board, including Winter. Ex. B, App. Supp. Pl.'s Mot. 1772. Because the Receiver's evidence shows that these transfers would not have been possible had there been effective board control or action regarding these activities on Winter's part, the Receiver has

shown that the SIBL board's – and Winter's – oversight failures were a substantial factor without which the injury to SIBL would not have occurred. *Id.* 1770–73. Thus, the Winter Estate is liable for $2 billion in damages to SIBL.

The Receiver has established the essential elements of his breach of fiduciary duty claim against the Winter Estate through undisputed evidence and accordingly is entitled to summary judgment on that claim.

### IV. THE COURT DENIES THE RECEIVER'S MOTION TO SEVER

The Court declines to sever the claim against the Winter Estate from the Receiver's claims against the other defendants in this case. Because the Court may enter final judgment against the Winter Estate without severing the claims and creating a new case, *see* Fed. R. Civ. P. 54(b), severance provides no benefit to the parties or the Court in terms of convenience, prejudice avoidance, or judicial economy. Because severance is unnecessary and unhelpful, the Court denies the motion to sever.

### V. THE COURT DENIES THE RECEIVER'S MOTION FOR TURNOVER ORDER

The Court denies the Receiver's motion for turnover order because the probate exception deprives this Court of authority to grant the turnover order.[5] The probate exception prohibits federal courts from "(1) probating or annulling a will or (2) 'seek[ing] to reach a

---

[5]This Court has jurisdiction to determine the Receiver's breach of fiduciary duty claim against the Winter Estate, as the breach of fiduciary duty claim –a tort – seeks an *in personam* judgment against the Winter Estate as a successor to Robert Winter. Adjudicating the breach of fiduciary claim does not involve the probate or annulment of a will or the disposition of property in the state court's custody. *See Marshall v. Marshall*, 547 U.S. 293, 312 (2006).

ORDER – PAGE 13

*res* in custody of a state court' by 'endeavoring to dispose of [such] property.'" *Curtis v. Brunsting*, 704 F.3d 406, 409 (5th Cir. 2013) (quoting *Marshall v. Marshall*, 547 U.S. 293, 312–13 (2006)). Because the probate exception limits federal courts' subject-matter jurisdiction, the Court must determine whether the exception applies, even when no party has requested such a determination. *See Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008) ("[Federal courts] are duty-bound to examine the basis of subject matter jurisdiction *sua sponte* . . . .") (quotation marks and citation omitted).

In the Fifth Circuit, whether the probate exception deprives a federal court of jurisdiction depends on "(1) whether the property in dispute is estate property within the custody of the probate court and (2) whether the plaintiffs' claims would require the federal court to assume *in rem* jurisdiction over that property." *Curtis*, 704 F.3d at 409. A federal court lacks jurisdiction if the answer to both questions is yes. *Id.* Here, the answer to both questions is yes; accordingly, this Court does not have jurisdiction to grant the Receiver's requested turnover order.

In pursuing a turnover order, the Receiver is placing in dispute estate property within the probate court's custody. By filing an inventory, an estate executor gives the probate court *prima facie* evidence that property listed in the inventory is within the probate court's jurisdiction. *Brown v. Fleming*, 212 S.W. 483, 488 (Tex. Comm'n. App. 1919, jdgm't adopted). The inventory must contain a complete list of claims to which the estate is entitled. Tex. Est. Code Ann. § 309.052. Once an inventory is filed, the probate court must either approve or disapprove the inventory, thus conclusively establishing whether a listed item is

estate property. Tex. Est. Code Ann. § 309.054. Here, Paul Winter filed an inventory listing a claim to proceeds from the Policies. No evidence before the Court shows that this claim has been disapproved as estate property. The probate exception signifies that federal courts should be wary of inserting themselves into estate administration issues that are reserved for state courts. Accordingly, the Court concludes that the Winter Estate's claims against the Policies remain within the probate court's custody, thus satisfying the probate exception's first requirement.

To issue the requested turnover order, the Court would need to assume *in rem* jurisdiction over the disputed estate property. Issuing a turnover order invokes the Court's *in rem* jurisdiction over the property that is subject to the order. *Cf. In re Apex Long Term Acute Care – Katy, L.P.*, 465 B.R. 452, 464–65 (Bankr. S.D. Tex. 2011) (In bankruptcy context, "a . . . court may issue [a turnover order] . . . in furtherance of the court's *in rem* jurisdiction.") (citation and quotation marks omitted); *In re Bison Bldg. Holdings, Inc.*, 473 B.R. 168, 172 (Bankr. S.D. Tex. 2012) (stating same). Granting the Receiver's motion here would essentially entail this Court ordering Paul Winter, in his capacity as an executor, to distribute estate property to satisfy a judgment. Doing so would be for this Court to exercise *in rem* jurisdiction over the estate property at issue, thus satisfying the probate exception's second requirement.

Accordingly, the probate exception applies to the Receiver's request for a turnover order. Because the U.S. Supreme Court has placed it beyond this Court's authority to grant

such an order in these circumstances, the Court denies the Receiver's motion for turnover order.

## CONCLUSION

The Court denies the Winter Estate's motion to dismiss, grants the Receiver's motion for summary judgment, denies the Receiver's motion to sever, and denies the Receiver's motion for turnover order.

Signed November 5, 2015.

                                      David C. Godbey
                                      United States District Judge